

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

FAGAN DICKSON
FIRST ASSISTANT

August 19, 1947

Hon. Elmer H. Parish
District Attorney
Wichita County
Wichita Falls, Texas

Opinion No. V-352

Re: Authority of a sher-
iff's deputies or a
Veterans' County Ser-
vice Officer to retain
compensation paid by
Veterans' Administra-
tion for transporting
mental patients to Vet-
erans' Hospital in a
county-owned automobile.

Dear Sir:

We refer to your letter of June 20, 1947, in
which you submit the following.

"We would like an opinion from your depart-
ment as to whether the money paid by the Veterans'
Administration to deputy sheriffs and Veteran
County Service office for attendant's fee and
mileage in transporting patients to the Veteran's
Hospital at Waco, Texas, is county funds and
should be turned over to the proper county offi-
cial.

"Deputy sheriffs in Wichita County, Texas,
are paid a fixed monthly salary from the officers
salary fund of the county. They are furnished
automobiles by the county, and all expenses of
operation of the cars are paid for by the county.
All necessary traveling expenses of the deputy
sheriffs are paid out of the General Fund of the
county.

"Wichita County has employed a Veterans
County Service Officer as provided by Art. 5798.
He is paid a salary by the county, and the above
article provides that all necessary traveling ex-
penses shall be paid by the county. He is not
furnished an automobile by the county.

"On February 4, 1947, deputy sheriff Martin
Boyle was paid $18.80 by the veterans administra-
tion for mileage and attendant's fee in trans-
porting Johnnie B. Fields to the Veterans Adminis-
tration in the county car and the county paid all
expenses.  On March 19, 1947, Deputy Sheriff H.
G. Whisnand was paid $18.86 by the V. A. for mile-
age and attendant's fee in transporting Frank C.
Rowan to the V. A. Hospital, and Veteran's County
Service Officer Jack Deaton was paid $6.50 by the
V. A. as a second attendant.

"Altogether eight patients have been trans-
ported to the Veterans Administration Hospital
at Waco, Texas, as mental patients by either one
deputy sheriff and the Veterans County Service
Officer or by two deputy sheriffs.  All expenses
of the deputy sheriffs are paid by the county.
When the Veterans County Service Officer assists
in transporting a patient, he travels in the
same county car as the deputy sheriff, but he
pays his own expenses.

"Our questions are:

"1.  Should deputy sheriffs turn into the
county the money received by them from the Veter-
ans Administration as mileage and attendant's fee
for transporting mental patients to the Veterans
Administration Hospital in a county car where all
expenses are paid by the county?

"2.  Should the Veterans County Service Of-
ficer turn into the county money received by him
from the Veterans Administration as mileage
and attendant's fee for transporting mental pa-
tients to the Veterans Administration Hospital
where he pays his own expenses, but travels with
a deputy sheriff in a county car operated at
county expense?"

We are assuming that the sheriff's deputies
were acting under authority of a warrant issued "to
the sheriff or to some other suitable person directing
him to convey the person of unsound mind to the hos-
pital designated in such warrant, which warrant shall
also prescribe the number of guards allowed, not to
exceed two" as provided in Article 5557 of Vernon's

Civil Statutes. Otherwise, the acts indicated in your inquiry constitute unlawful use of a county-owned auto-mobile and unauthorized consumption of time of officers paid for by the county. (Emphasis added)

The Constitution fixes the compensation of certain officers and authorizes the Legislature to pro-vide by law for the compensation of all other officers and servants. The rule of decision in Texas is that "an officer may not claim or reach any money without a law authorizing him to do so, and clearly fixing the amount to which he is entitled." Binford vs. Robinson, 244 S.W. 807; McLennan County vs. Boggess, 137 S.W. 346; Crosby County Cattle Co. vs. McDermott, 281 S.W. 293; Duclos vs. Harris County, 291 S.W. 611, affirmed, 298 S.W. 417.

Article 3194 V. C. S. provides for compensa-tion for conveying patients to asylums, the pertinent part of which is:

"The expenses of conveying all public patients to the asylum shall be borne by the counties re-spectively, from which they are sent; and said counties shall pay the same upon the sworn account of the officer or person performing such service, showing in detail the actual expenses incurred in the transportation. In case any public patient is possessed of property sufficient for the purpose or any person legally liable for his support is so possessed of property, the county paying the ex-penses of such transportation shall be entitled to reimbursement out of the estate of the lunatic. . . ."

Article 3188 of said Statutes authorizes such transportation to the United States Veterans' Admini-stration Hospitals. When a county furnishes such ser-vices, it may seek reimbursement from the veteran's es-tate. The rules of the Veterans Administration provide for payment by it of expenses of such transportation to protect the veteran and his estate. Hence the money should be turned over to the county so that such estate will be protected; i.e., the county's claim will be satisfied.

Both of the deputies were full time employees of Wichita County, on a salary basis, engaged in the performance of the duties for which they were employed,

and used a county-owned automobile. Each of them was authorized to receive actual expenses from the County, in addition to his salary, as provided by law, and no more. Therefore, in view of the foregoing, it is the opinion of this Department that any expense money received by the deputies from the Veterans' Administration should be paid into the County Treasury by them.

Opinion No. 0-3198, by a former Attorney General pertains to the compensation of sheriffs for conveying lunacy patients to State Hospitals. We enclose a copy of the opinion for your information.

Veterans County Service Office is created by Article 5798a-2, Section 1, of Vernon's Civil Statutes, which provides, in part:

"When the Commissioners' Court of a county shall determine that such an office is a public necessity . . . it shall by a majority vote of the full membership thereof, maintain and operate such an office and shall appoint a Veteran's County Service Officer . . . Such Veterans County Service Officer . . . shall receive a salary fixed by the County Commissioners' Court . . . and travel expense of such Veterans County Service Officer . . . and all salaries of the personnel of such office and other expenses of such office shall be paid on order of the Commissioners' Court . . ."

The duties of a Veterans County Service Officer are prescribed in Section 3 of said Article as follows:

"The duty of the Veterans County Service Officer and/or the Assistant Veterans County Service Officer shall be to aid all residents of the county and/or counties providing for such officers who served in the military, naval or other armed forces or nurses corps of the United States during any war or peacetime enlistment, and/or veterans and/or orphans and/or dependents in preparing, submitting and presenting any claim against the United States or any state, for compensation, hospitalization, insurance or other item or benefits to which they may be entitled under the existing laws of the United States, or of

any state, or such laws as may hereafter be enacted, pertinent thereto. It shall also be their duty to defeat all unjust claims that may come to their attention. No fees, either directly or indirectly, for any service rendered by such Veterans County Service Officer and/or Assistant Veterans County Service Officer shall be charged of applicant, nor shall they permit the payment of any fee by applicant to any third person for services that might be rendered by them, nor seek to influence the execution of a power of an attorney to one national service organization over that of another."

We are of the opinion that the language "presenting any claim against the United States or any State, for compensation, hospitalization, insurance or other items or benefits to which they may be entitled under existing laws of the United States" does not include accompanying a veteran to a Veterans Hospital by a Veterans County Service Officer. Therefore, Article 5798a-2 imposes no duty upon a Veterans County Service Officer to accompany an insane veteran to a hospital.

If the Veterans County Service Officer went as a guard or attendant pursuant to Article 5557, then the county is liable for actual expense incurred by such guard or attendant in conveying such person to a Veterans' Hospital. In the latter event, the expense money received from the Veterans Administration by the guard should be paid into the County Treasury.

## SUMMARY

1. Money received from Veterans Administration by deputies in the office of Sheriff of Wichita County for services rendered by them in transferring a mentally unsound person to a Veterans Hospital in an automobile owned by Wichita County, while their deputies are engaged in full-time employment by Wichita County on a salary basis, should be paid over to the County.

2. If a Veterans County Service Officer accompanied a mentally unsound person to a Veterans' Hospital as a guard, pursuant to Article 5557 V. C. S., Wichita County is liable

to such officer for actual expenses paid by
him, and the money paid to him by the Veter-
ans' Administration for such service belongs
to said county.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By                       W. T. Williams
                              Assistant

APPROVED

FIRST ASSISTANT
ATTORNEY GENERAL

WTW:et:jm:mrj